May it please the Court, my name is Wayne Young. I represent the appellant Andrew Carter. There are two issues of the four that I briefed that have been significantly impacted by subsequent decisions of this Court. The first one, and the one pointed out by counsel in the government's Rule 28J letter, the issue is brandishing. Who should make the decision about whether or not the gun was brandished, the judge or the jury? Washington is dispositive on the issue of who makes the decision. It is clearly the judge. However, our position is that the Court never made a finding in this case that the gun was brandished. It wasn't, the jury wasn't instructed to make that decision. The verdict didn't have anything about it. The judge did nothing, made no finding at sentencing. Counsel asked the Court, are you finding that a firearm was brandished? And the Court's response was, yes, a firearm was present. That's at ER 178. So the Court was asked whether it was making a finding of brandishing and its response. It's a bit confusing because the Court did sentence as if it was a brandishing, gave the 84 months rather than the 60. But the Court's actual words, which predominate are, I think- Is there any rule of interpretation that we should apply as to interpreting the judge's finding in view of the evidence in the case? For instance, if there are six witnesses who testified at different times that the gun was brandished by one of the co-conspirators at the tellers in the different banks, and the judge said the firearm was present, should we interpret present in view of the testimony as to brandishing? I think the trial court was making a finding, and the rule is the words of the Court dominate or take precedence over what's written in the order. So to that extent, there was no finding. I think what the Court's getting at is, if there's all this evidence, is the We have to have at least a specific finding, and that's not it. You think that the finding, the gun, yes, the gun was present, is inconsistent with a finding that the gun was brandished? Yes. Because you can be you can have a gun in a 924C. It's in your pocket. If it's visible or something to a teller, in this case, that would be present for the purposes of the five-year mandatory consecutive, and that's different than the brandishing. So there's a difference between the two. Mr. Yang, the Court said that it was imposing a mandatory seven-year sentence under 924C. Is there any way the Court could have imposed a mandatory seven-year sentence without a finding of brandishing? No, and that's why there's a conflict. That finding seems to suggest the Court intended to make a finding of brandishing, because it's a mandatory five absent that finding. But the literal words that the Court used were the gun was present. There was another exchange where the defense counsel was arguing that there was no finding that the firearm was brandished. And the Court said, I heard the case, didn't I? And then the defense counsel said, yes, I won't rehash that issue. Is that inconsistent with the Court and with the defense counsel understanding that there was a finding of brandishing? I think that exchange is a little vague, Your Honor. Had the Court there said, I'm making a finding that's brandished, that would certainly impact its latest finding. But again, that was left uncertain. You know, it just didn't answer the question. So that's the first of the issues that are impacted by decisions, subsequent decisions of the Ninth Circuit. The second is the Booker issue. Well, before you get to the Booker issue, if this were the normal case, we could remand it to the district court with instructions to clear up the testimony or clear up the finding. But this can't be done in this case because Judge Ray has died. So does that change the situation? If remand is ordered because the Court wants to have a finding as opposed to this court holding that that is the finding, a mere presence, I think you follow the Ameline procedures, which is the same thing has happened in Ameline situations that the trial court has retired or passed away. And then it's sent to a new judge. We're going to send it back to a district court judge for him to read the record and determine whether Judge Ray meant present or brandished. Well, that's why I think this Court can make a decision that absent specific language of the finding, the only finding of brandishing, all that there is, is a finding of present and reduce the seven-year sentence to the five-year sentence. Don't you think if it's remanded, it should be remanded on an open record so the new judge can conduct whatever hearing is necessary to impose the proper sentence? Yes, sir. If it does get remanded, an open record and the Court would proceed how it chooses. And make a finding one way or the other. Yes. Turning to the Booker argument. Or can we make that finding on the record before us? I don't believe this Court can make a finding, what it believes that Judge Ray intended. It can either go on the plain language and say there is no finding of a brandishing or it has to remand it for the district court to make that finding. Or we can interpret Judge Ray's word in the context of the evidence. Can we not? I suppose you could. Turning to the Booker argument, our argument is the record does not establish that Judge Ray exercised its discretion in sentencing Carter. The range was 471 to 492 months. He requested a below-guideline sentence of the mandatory minimum. And he provided substantial reasons for that, going to his childhood characteristics, equity among defendants. And the Court, with almost no explanation, imposed a low-end guideline sentence of 471 months and did not address the request for a departure. What do you mean by below the mandatory minimum? Is that the statutory minimum or what? What do you mean by? No, below the guideline minimum. I'm sorry, Your Honor. The statutory minimum is 360 or 384, depending on the brandishing. The guideline minimum was 471. Counsel asked for the mandatory minimum. The Court imposed the guideline minimum with very little exchange as to why the Court made that decision. And so the issue here is, does Judge Ray's statement of reason satisfy 3553? And that is clearly subject to the pending inbound cases of Cardi and Zappala. Because among the issues raised by this Court in those cases are whether the defendant is guilty of the 3553 factors. However, Cardi and Zappala get decided, our position is that there's going to be an obligation on trial judges, because of 3553, not to go through them one by one and make a finding, but to come to grips with the sentencing factors, to come to grips with the requirements or the request of the defendant, and fashion a sentence. DS Arguedas, which is a case, unlike Cardi and Zappala, which have been, we can't cite to them because they're pending, DS Arguedas remains the law in this circuit, and it requires a showing that the Court considered the 3553 factors in imposing sentence. And I don't believe the statements by Judge Ray here approach a genuine consideration of the factors. There's just one reference. Well, it's good enough for deterrence. It's not good enough, but he said, this satisfies deterrence and it satisfies punishment. But all those claims that Mr. Carter brought about his childhood, about fairness among defendants, there's several of them raised in the sentencing memos in the district court, and the court never came to grips with any of them. Ms. Jankins, before your time is up, may I ask you a question about the substitution of counsel? Yes. Carter's motion to substitute counsel was on the third day of trial. The record, the brief, doesn't reflect whether there was an attorney ready to step in and represent him if the court had granted the substitution without any delay. Was that the case? I don't believe there was an attorney ready. And it was the third day of trial, but it was before opening statements. The first, my understanding, I wasn't there, was that the jury selection had taken place. The jury had been selected. Opening statements were going to take place. And again, that motion for substitute counsel, there's three issues. One is the adequacy of the inquiry. Again, there was almost no inquiry in this case. They allowed counsel to say why he thought there was a conflict, allowed my client to say what he wanted, but there was none of that probing questioning that you see in the cases. But the real issue, I think, is the extent of the conflict. And there was a significant conflict. What Carter wanted to do was, all that mattered in this case, in essence, was the second 924C count, because that's the one that was going to generate 300 months, 25 years, mandatory consecutive. So the strategy of the defense is to try and avoid that. So to retain his credibility on a denial that he knew or that it was foreseeable that the gun was going to be used in the robbery, he wanted to concede there was a robbery, he participated in it. That's what he wanted to do. That's what his counsel told the court. And that required follow-up by the court, because that is just the fundamental right of a criminal defendant to put on his defense. This is how I want to approach it. I'm in a lot of trouble here. I'm looking at this incredibly severe sentence, but almost all of it, a big chunk of it, comes from a 924C second conviction, a 300-month mandatory consecutive. So to retain credibility on my denial of that, I want to concede that there was a robbery and I participated in it. And that was brought to the court, and I want to testify about that, and the court made no inquiry. So of the three factors, I think the adequacy of the inquiry and the extent of the conflict are significant. What sort of inquiry should the court have made that wasn't made? Was it all just laid out exactly what the conflict was? And didn't the court ask Mr. Carter if he had anything to add? He did, Your Honor, and my client said nothing. But the way it was presented by counsel was he wants to plead guilty to two counts that aren't charged. He wants to plead guilty to a conspiracy and an unarmed bank robbery, a 2113A. And you can't do that. And I, whereas what he really wanted to do, thinking through the case, was concede that he participated, concede that there was a robbery, even an armed robbery, because that is not, it's difficult, but he could still be acquitted on the 924C. It's a reach, but that's what he wanted to do, because even the armed robbery, it may not have been foreseeable to him, even though a gun was used. Wasn't there testimony that Mr. Carter was late to the first meeting of the co-conspirators because he was looking for a gun to bring to the meeting? There is, but nevertheless, that's the defense he wanted to present. So it's really just trial tactics. Well, it gets closer, I believe, to the right to present a defense. When you have an issue that fundamental in a crime that carries that kind of right to present his defense, but I agree, Your Honor, where does trial tactics end and the right to present a defense begin is a difficult question. But given the magnitude of the potential sentence and what he wanted to do, he'd been through a trial already, and he knew what the landscape looked like and he knew what he was looking at, and his best hope was to try and defend on the 924C. I want to testify. This is the way I want to do it. I think those are in my best interest, and his counsel refused to do it. And I think at that point, we've met the standard. We've kept you beyond your time, but we will give you two more minutes. Thank you. May it please the Court. I'm Dorothy Kim, and together with my colleague, Elizabeth Yang, I represent AFLI, the United States. Your Honors, I will address the issue arising from the robbery of Community Bank in Pasadena, California, and Ms. Yang will address the issues arising from the robbery of United California Bank in Commerce, California. The first issue I'd like to discuss is whether the district court abused its discretion when it denied defense counsel's motion to withdraw as counsel. First, there is one error in the government's responding brief at page 43. Which states that the defendant could not plead to two lesser included offenses. Because, however, the defendant was charged in count one with conspiracy, with the object being conspiracy to commit unarmed bank robbery, if the defendant wished, he could have pled to count one, although he could not plead to unarmed bank robbery, because he was charged in count two with armed bank robbery. But, Your Honors, there's no evidence in the record that what the defendant wished to do was actually plead to the counts in the indictment, although there was reference to it in the defendant's opening brief. I believe the record amply demonstrates that what the defendant wanted to do was he wanted his counsel to admit all the facts in opening statement. Therefore, the dispute was over trial tactics only. And that type of dispute does not warrant the granting of a motion to withdrawal. Particularly where, as here, as Judge Ikuda pointed out, the motion was made after the jury had been impaneled, third day of trial with two co-defendants who were proceeding to trial. This was, Your Honors, the one and only time that the defendant made the motion. And therefore, it is distinguishable from the other cases, including the one case cited in the party's brief, Nguyen, which is a case in which the defendant made the motion after the jury had been impaneled. But in that case, the defendant had made at least three prior attempts to raise the issue of a conflict with the court before the impanelment. Your Honor, all three factors support an affirmance of the court's denial of the motion. First, the timing. As I pointed out, it was on the third day of trial, after impanelment. Secondly, the extent of the conflict. Your Honors, although there is one statement in the record referencing a breakdown, it's clear when you read the record as a whole that the dispute was over trial tactics only. And indeed, the reference to a breakdown occurs at the excerpt of Record 73, where the defense counsel states that there is a potential conflict and a breakdown because of this difference in terms of trial strategy. In fact, everything the defense counsel said indicated that he and his client were communicating. They were discussing the relative merits of an opening statement. Counsel advised the defendant, I believe it's in your best interest for me to reserve opening statement and see how the government's case comes out. The counsel also stated that the two had discussed the relative merits of the defendant testifying, with counsel pointing out that the defendant had a prior conviction. The defendant had participated in another robbery, the Commerce Bank robbery, just days before. And that evidence did not come out at trial, and surely it would had, had the defendant testified. Because the dispute was over trial tactics only, and this court in Corona Garcia stated that even if the dispute over trial strategy were severe, it would not the attorney. We submit this factor also supports an affirmance. Now finally, the adequacy of the inquiry. Your Honor, in this case, Judge Ray did ask open-ended questions. He permitted defense counsel to state for the record what the dispute was, and then question the defendant, do you have anything to add? Your Honors, I believe Franklin is instructive on this case. In that case, the district court also asked open-ended questions. But the issue is whether the open-ended and general questions provides the court with sufficient basis for reaching an informed decision. In this case, everything that defense counsel said, and defendant's agreement with those statements, indicated that there was no breakdown in communication, and that the extent of the conflict was not so great, that a substitution was appropriate. Now, as to this, the issue of the foreseeability, I wanted to point out that the evidence regarding the community bank robbery was not that Carter had arrived late at the meeting, but that Carter was actually at the morning meeting in which one of the co-conspirators held out a bag of guns. Therefore, he could not, with likely success, argue, at least in this trial. I think the point that counsel is making is that regardless of the evidence, the judge did not make a finding of brandishing in so many words. He said, yes, I find the gun was present. Yes, Your Honor. Why is that a 5-year rather than a 7-year maximum? Well, Your Honor, not to break it up too much, but Ms. Yang is going to deal with the sentencing issues. I just point out that if, in fact, it was defendant's wish to leave the foreseeability issue and admit the facts of the first two counts, namely that he engaged in a conspiracy and committed a bank robbery, he could not have argued, at least in the community bank robbery, there was no evidence that he came late to the morning meeting. To the contrary, there was evidence he was present at the morning meeting when someone held out a bag of guns. Seeing that my time is up, I'll turn it, the elect, turn it over to Ms. Yang. Good morning, Your Honors. Very briefly with regard to the brandishing finding with regard to 924C on the August 1st, 2002, United California bank robbery, government submits that the Court did make an adequate finding of brandishing on a preponderance of the evidence, and that this Court should look at the judge's statement, yes, a firearm was present, not only in context of the trial evidence, which clearly established that firearms were brandished during this bank robbery, but also in context of the sentencing hearing itself. Reading the record as a whole of that sentencing hearing, Your Honors, we'll notice that this exchange is when the government asked the Court if it found by preponderance that a firearm was brandished, followed a lengthy recitation of the evidence that was presented at trial to establish brandishing. And as Your Honor ---- The question is not whether the evidence was sufficient to support the finding or such a finding had been made. The question is, did he make a finding? It seems to be quite ambiguous and seems to me you've got to construe an ambiguous statement like that, you know, under the rule of lenity in favor of the defendant. Your Honor, the government ---- He really didn't say, yes, I find that it was brandished. If you had some doubt, I mean, the U.S. Attorney says, you know, ask them, well, what does that mean when you say it was present? Are you saying it was brandished? No one asked him that question. Right? Your Honor, that is correct. However, the government does maintain that the statement, yes, the firearm was present, is a sufficient finding of brandishing based in context on the discussions that were contained in the sentencing hearing. Well, that erases, you know, any difference between the 5-year mandatory and the 7-year mandatory, doesn't it? If being present gives you 7 years, you know, what does, you know, if he says yes, I find that it was present. You still argue he means 7 years? No, Your Honor. In fact, statement is made in a vacuum. But here, that statement was not made in a vacuum. Throughout the parties' sentencing papers and the sentencing hearing, there was never any sense or any statement that a firearm was merely present during this bank robbery. Your Honor, he said that, and he never made a finding at all until he was pressed by the government. And then after being pressed, all he said was, yes, I find it was present. Your Honor, I believe that his statement, yes, it was present, is an adequate finding of brandishing on this record in this case. Do you have any cases which empower this Court to interpret the language used at the sentencing hearing to transform present to brandished? Your Honor, I do not. The government's argument to support your position that, you know, we can infer that when he says present, what he meant was brandished. Based on the record as a whole, Your Honor, that would be the case. Well, what's your best case? Can you cite us the case? Your Honor, I do not have a case that would allow, that would order this Court or construct this Court to convert language taken in a vacuum. But I do believe on the record as a whole, it can be interpreted as the Court made a finding of brandishing and consequently sentenced defendant to the 7-year mandatory minimum for brandishing. What would be the effect of our finding that the trial court's finding was insufficient for brandishing? The effect would be the defendant would be sentenced to a 5-year mandatory minimum for the first 9-year mandatory minimum. And as for the second one? He would be, it would be a consecutive 25 years regardless. Regardless, right. Of the brandishing or, of the brandishing finding, that's correct, Your Honor. So the best that could happen would be 2 years off? Yes, Your Honor. Well, just a minute now, not so fast, sir. Okay, not so fast. I'm speaking to counsel, not so fast right now, because if we find that, you know, we can't tell what Judge Ray meant by this and we can't send it back to him, can't we send it back for a new hearing, sentencing hearing? If this Court ordered a full remand, an open sentencing, this Court could send it to a new district court judge. The record would be before the district court judge and that judge could make that. Are you saying we can't do that? Excuse me, Your Honor? You seem to be implying that we couldn't do that because if we didn't find that this was brandishing, it means you would get 5 years. That's what you said. It's an answer to Judge Bea's question. If this Court decides not to remand this case for sentencing based on Booker's, Zavala, Cardi, the subsequent authority, and this Court was going to affirm the sentence or rule on it at this level, and this Court found that Judge Ray did not make a specific brandishing finding, this Court would, obviously, the fallback would be that there was only a 5-year mandatory minimum finding. So if we find that Judge Ray did not make a finding of brandishing, then our only option is to order the 5-year sentence? Is that what you're saying? I don't believe that's your only option, Your Honor. I believe that is one of your options. Your other option is to send it back to a district court for full resentencing. Okay. With regard to defense counsel's argument regarding Booker and the Court's recitation or consideration of the 3553 factors, here the government believes the district court did sufficiently consider the 3553A factors. A panel of this Court, United States v. Nix, did state that the district court is not required to articulate each factor separately. So long as the record as a whole indicates that the Court considered the factors. And here, based on the record, Judge Ray did consider the factors. He considered the nature of the crimes at Excerpts of Record 176, the defendant's age, his criminal history, his family circumstances at Excerpts of Record 176 to 177. He also found that the lengthy sentence was, quote, sufficiently punitive and hopefully will deter against any further criminal activity, which is found in Excerpts of Record 177. And the Court did say several times that the guidelines were advisory only. He was taking them into account. But there's nothing on the record to indicate that the Court gave the guidelines presumptive weight or any greater weight than any of the other factors in determining that, in addition to the statutorily mandated sentence which the defendant was required to have based on the 924Cs, that the sentence for the conspiracy and unarmed bank robbery convictions did not consider, that he did not consider 3553A factors. And I think the record is clear that he did, and I think that is sufficient. Kennedy, I'm afraid you've exceeded your time. Thank you very much. Thank you, Your Honors. Mr. Kim pointed out something that I had misjudged, which was that the conspiracy was charged as a 2113A, which is an unarmed bank robbery. So he could have pled guilty to that. I had said earlier that he couldn't plead to the two things he wanted to, but he actually could have pled guilty to the conspiracy. But he could have, but is there any indication on the record that his instructions to his counsel were, plead me guilty to the two counts, rather than admit the facts in opening statement? I think what the record says is he wants him to plead guilty to those two counts. And I had said earlier, you couldn't. I was mistaken. He could have pled guilty to the conspiracy count. So I think that alters whether it's a trial strategy issue. But the other point Ms. Kim made was there's really no evidence what Mr. Carter wanted to do, that basically I'm projecting what he wanted to do. That's why you needed the inquiry. Here's a defendant in a conflict with his lawyer trying to articulate what it is he wanted to do, and the Court made no inquiry. But when you think it through, what he wanted to do made as much sense as anything you could choose in this case, which is to admit that which they've already can clearly prove and to take a chance at defending the 921C. By the way, where do you get your theory of what the defendant wanted to do? As you say, if there's nothing in the record on that. Well, all we have in the record is what counsel said, which is he wants me to plead to counts one and two. But the obvious, to me anyway, having been there, idea there was to not dispute those facts, those counts, and reserve everything for disputing the foreseeability on the 924C. But again, Judge DeSima, that's the point of having the inquiry. The defendant is untutored in the law. He knows what he wants to try and do, and the Court has to make the inquiry. And with that, I'll submit. Thank you very much. Thank you. Thank all counsel for an excellent argument. We'll stand in recess for 15 minutes. Thank you very much.
judges: Tashima, Bea, Ikuta